# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 17, 2016          Decided May 9, 2017

No. 15-5325

AQUALLIANCE,
APPELLANT

v.

UNITED STATES BUREAU OF RECLAMATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01018)

*Matt Kenna* argued the cause and filed the briefs for appellant.

*Carl E. Ross*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: BROWN, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

2

MILLETT, *Circuit Judge*: There may be "water, water, everywhere," but nary a water well to be found.[1] AquAlliance wants to know where the wells are, and it filed a Freedom of Information Act ("FOIA") request to find out. But the federal government declined to say, invoking FOIA Exemption 9, which permits the withholding of "geological and geophysical information * * * concerning wells," including "maps." 5 U.S.C. § 552(b)(9). The question before us is whether Exemption 9 permits the government to withhold information and maps disclosing the locations and depth of certain water wells. We hold that Exemption 9 means what it says and thus the government's withholding was permissible.

# I
## A

Congress enacted FOIA to "permit access to official information long shielded unnecessarily from public view." *Milner v. Department of the Navy*, 562 U.S. 562, 565 (2011) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). However Congress was also aware that "legitimate governmental and private interests could be harmed by release of certain types of information." *Department of Justice v. Julian*, 486 U.S. 1, 8 (1988) (quoting *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982)). FOIA thus "balance[s] the public's need for access to official information with the Government's need for confidentiality." *Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 144 (1981). To that end, FOIA exempts nine categories of records from the government's otherwise broad duty of disclosure. *See* 5 U.S.C. § 552(b). While those exemptions "must be narrowly construed," *Milner*, 562 U.S. at 565 (quoting *Abramson*, 456 U.S. at 630), courts still must

---

[1] SAMUEL TAYLOR COLERIDGE, THE RIME OF THE ANCIENT MARINER (1798).

respect the balance that Congress struck and give the exemptions the "meaningful reach and application" that their plain text requires, *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); *see also DiBacco v. United States Army*, 795 F.3d 178, 183 (D.C. Cir. 2015).

At issue in this case is Exemption 9, which provides in full that FOIA's general duty of disclosure has no application to "geological and geophysical information and data, including maps, concerning wells."  5 U.S.C. § 552(b)(9).

**B**

The Department of Interior's Bureau of Reclamation oversees water resource management across the United States. Among the Bureau's many programs is the Central Valley Project, the "largest federal water management project in the country."  *Central Delta Water Agency v. Bureau of Reclamation*, 452 F.3d 1021, 1023 (9th Cir. 2006).  The Project comprises a series of dams, twenty-one reservoirs, eleven hydropower plants, and 500 miles of canals and aqueducts that distribute water south from the Sacramento and San Joaquin Rivers in Northern California, which together serve 20 million people and 7 million acres of farm land in California.  *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 593–594 (9th Cir. 2014).  Water districts within the Central Valley Project can sell their river water to other districts further south if the Bureau approves that water transfer. *See* Central Valley Project Improvement Act, Pub. L. No. 102-575, § 3405(a), 106 Stat. 4600, 4709–4712 (1992).

Plaintiff AquAlliance is a non-profit organization dedicated to protecting the Northern California ecosystem and watersheds.  Concerned about the potential adverse effects of water transfers on the environment, AquAlliance has

frequently submitted comments to the Bureau on water transfer applications.

In November 2013, AquAlliance filed a FOIA request seeking copies of all documents related to water transfers that occurred in 2013. In May 2014, AquAlliance filed a similar FOIA request for all documents related to water-transfer applications filed with the Bureau for 2014. When the Bureau failed to provide timely responses to both requests, AquAlliance filed suit in the United States District Court for the District of Columbia to compel disclosure of the requested documents. That lawsuit apparently prompted the Bureau to turn over most of the requested records. But, as relevant here, the Bureau redacted information relating to water-well construction, completion, depth, and location.

AquAlliance and the Bureau both filed motions for summary judgment. The district court denied AquAlliance's motion and granted summary judgment to the Bureau on the ground that Exemption 9 permitted the withholding of well depth and location information. *See AquAlliance v. Bureau of Reclamation*, 139 F. Supp. 3d 203, 209 (D.D.C. 2015). The court reasoned that the statutory text draws "no distinction * * * among types of wells, and * * * provides no reason to think that *water* wells would be excluded from the exemption's purview." *Id.* at 209–210. The district court also noted that well location and depth "is seemingly prototypical 'geophysical information.'" *Id.* at 211.

AquAlliance appealed in the hope that this court would read the statutory text differently. We do not.

**II**

We review the district court's grant of summary judgment *de novo*. *See Citizens for Responsibility and Ethics in Washington v. Federal Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013). The burden is on the government to prove that a claimed FOIA exemption applies. *See National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

In determining the applicability of Exemption 9, we "start[] with its text." *Milner*, 562 U.S. at 569. In this case, that is also where we end. As noted earlier, Exemption 9 permits the Bureau to withhold from disclosure "geological and geophysical information and data, including maps, concerning wells." 5 U.S.C. § 552(b)(9). On its face, AquAlliance's request seeks "information and data" "concerning" the depth and location of "wells," specifically "including maps." The ordinary meaning of "wells" includes water wells. *See, e.g.*, *Well*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "well" as "[a] hole or shaft sunk into the earth to obtain a fluid, such as *water*, oil, or natural gas") (emphasis added).

The depth and location of wells straightforwardly qualifies as "geological and geophysical information," 5 U.S.C. § 552(b)(9). Geological and geophysical records document the physical composition and structure of (for present purposes) the Earth, including its subsurface. *See*, *e.g.*, 8 MCGRAW-HILL ENCYCLOPEDIA OF SCIENCE & TECHNOLOGY 36 (11th ed. 2012) (defining "geology" as "[t]he study of the Earth's materials and of the processes that shape them"); *id.* at 80 (defining "geophysics" as "[t]he study of the Earth and its relation[] to the rest of the solar systems," including "the Earth's interior"); *see also* Oral Argument at 8:24-8:36 (AquAlliance counsel: "I think the definition of geophysical refers to more the structure of the underground area."). Geological maps, for example,

often disclose a region's topographical features, plate tectonics, and soil composition. *See* 8 MCGRAW-HILL ENCYCLOPEDIA, *supra*, at 42–43. Hydrogeological maps, in particular, show the locations of aquifers conveying water beneath the Earth's surface.[2]

Providing the well-depth and location information to AquAlliance would thus necessarily disclose geological or geophysical information. After all, to function, water wells must be drilled deep enough to reach the sub-surface water table. So the depth and location of wells reveal the location both of groundwater deposits or flows and of aquifers or the water table. That is archetypical geological and geophysical information, which is obtained through geophysical processes. *See, e.g.*, 8 MCGRAW-HILL ENCYCLOPEDIA, *supra*, at 72–73 (seismic mapping is used "in groundwater studies, engineering geophysics, and mining to map the water table"); *id.* at 77 (electrical survey methods are effective "in exploring for ground water and in mapping bedrock"). AquAlliance's FOIA request thus falls squarely within Exemption 9.

AquAlliance voiced two objections to that plain-text reading. First, AquAlliance argues that information should only qualify as "geological and geophysical" if it (i) is technical or scientific, and (ii) would bestow a competitive advantage on the person who receives it. That argument fails because there is nothing ambiguous about "geological and geophysical," at least not in a way that would permit judicially engrafting a competitive-advantage limitation onto the text.

---

[2] *See, e.g.*, Kenneth E. Lite, Jr., *Hydrogeologic Mapping*, WATER ENCYCLOPEDIA, http://www.waterencyclopedia.com/Hy-La/Hydrogeologic-Mapping.html (last visited April 26, 2017).

AquAlliance points to the legislative history of Exemption 9. But neither the House nor the Senate Report contains any reference to competitive disadvantage or scientific technicalities. S. REP. NO. 813, 89th Cong., 1st Sess. 37 (1965); H.R. REP. NO. 1497, 89th Cong., 2d Sess. 32 (1966). Notably, when Congress wanted to craft a FOIA exemption to protect trade secrets and competitive financial or scientific information, it knew how to say so. *See* 5 U.S.C. § 552(b)(4) (applicable to confidential "commercial or financial information").

AquAlliance also argues that Exemption 9 was meant to apply only to oil and gas wells, reasoning that, for such wells, geological and geophysical information can have significant value to economic competitors. The short answer is that— whatever AquAlliance believes Congress might have meant— Congress *said* geological and geophysical information "concerning wells," without any such adjectival limitation.

AquAlliance points out that the House Report discusses Exemption 9's purpose as protecting oil and gas companies from competitors eager to freeload on the companies' research investments. *See* H.R. REP. NO. 1497, *supra*, at 32 ("Witnesses contended that disclosure of the seismic reports and other exploratory findings of oil companies would give speculators an unfair advantage over the companies which spent millions of dollars in exploration.").

That is no help to AquAlliance. The Supreme Court has used legislative history only to "illuminate ambiguous text" in FOIA. *Milner*, 562 U.S. at 572; *see also Department of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). The problem for AquAlliance is that there is nothing ambiguous about Exemption 9's unqualified reference to "wells."

In any event, nothing in the House Report says that protecting oil and gas companies was the House's *only* concern.  And the Senate Report on the bill lacks any such limiting language.  Instead, the Senate Report explains that the Exemption was added "to protect from disclosure certain information which is highly valuable to several important industries and which should be kept confidential when it is contained in Government records."  S. REP. NO. 813, *supra*, at 37.  Water wells directly implicate that purpose, given the value of water and competing demands for it, especially in the Western United States.  *See, e.g.*, Michael Wines, *West's Drought and Growth Intensify Conflict Over Water Rights*, NYTIMES.COM (March 16, 2014), https://www.nytimes.com/2014/03/17/us/wests-drought-and-growth-intensify-conflict-over-water-rights.html  ("Residents of the arid West have always scrapped over water.").

AquAlliance, in short, asks the court to use "ambiguous legislative history to muddy clear statutory language," *Milner*, 562 U.S at 572.  That we cannot do.  The proper course, instead, is for this court to assume that Congress meant what it said, and said what it meant.[3]

---

[3] *See Loughrin v. United States*, 134 S. Ct. 2384, 2391 (2014); *Connecticut National Bank v. Germain*, 503 U.S. 249, 253–254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

The judgment of the district court upholding the Bureau's withholding of water well location and depth information under Exemption 9 is affirmed.[4]

*So ordered.*

---

[4] Because we conclude that the Bureau properly withheld the well depth information under Exemption 9, we do not reach the Bureau's separate argument that the information is also covered by Exemption 4, 5 U.S.C. § 552(b)(4).