# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued December 15, 2022 　　　Decided August 29, 2023

No. 22-5104

ASCENDIUM EDUCATION SOLUTIONS, INC.,
APPELLEE

v.

MIGUEL A. CARDONA, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE DEPARTMENT OF EDUCATION AND
DEPARTMENT OF EDUCATION,
APPELLANTS

―――――

Consolidated with 22-5117

―――――

Appeals from the United States District Court
for the District of Columbia
(No. 1:19-cv-03831)

―――――

Steven H. Hazel, Attorney, U.S. Department of Justice, argued the cause for appellants/cross-appellees. With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Mark B. Stern, Attorney.

Kevin M. St. John argued the cause and filed the briefs for appellee/cross-appellant.

Before: WILKINS, WALKER and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

Concurring opinion filed by *Circuit Judge* WALKER.

PAN, *Circuit Judge*:  When Congress passed the Higher Education Act of 1965 (the "Act"), 20 U.S.C. §§ 1001–1155, it created the Federal Family Education Loan Program ("FFELP" or "Program"), *see id.* § 1071–1087-4.  The FFELP incentivized financial institutions to lend money to borrowers with poor credit or low incomes by establishing a network of guarantors, which would protect against the risk of those borrowers failing to repay their Program loans.  *See id.* § 1071(a); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015).  When borrowers default on loans issued under the Program, guarantors purchase the loans from the lenders and then try to collect the debts from the borrowers. *See Bible*, 799 F.3d at 640–41.  The guarantors, in turn, are reinsured by the federal government.  *See id.*; *see also* 20 U.S.C. § 1078(c); 34 C.F.R. § 682.404.

The Act permits guarantors to charge some debt-collection costs to defaulting borrowers.  *See* 20 U.S.C. §§ 1091a(b)(1), 1078-6.  But in 2019, the Department of Education issued the Rule at issue in this case — 34 C.F.R. § 682.410(b)(2)(i) — which prohibits guarantors from assessing any costs against borrowers who take steps to end their default status within 60 days, by agreeing to repay or to rehabilitate their loans.  *See* Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49,788, 49,926 (Sept. 23, 2019) (codified at 34 C.F.R. pts. 668, 682, 685).

Ascendium Education Solutions ("Ascendium") is a Program guarantor that previously charged debt-collection costs to defaulting Program borrowers who entered loan-rehabilitation agreements. Ascendium challenged the Rule under the Administrative Procedure Act ("APA"), arguing that the Department of Education and its Secretary (collectively, the "Department") did not have statutory authority to promulgate the Rule because the Rule conflicts with the Act. The district court ruled that Ascendium lacked standing to challenge the Rule as it applies to borrowers who enter repayment agreements because Ascendium did not charge such borrowers for any collection costs. But the district court held that the Rule exceeded the Department's authority under the Act with respect to borrowers who enter rehabilitation agreements. Both Ascendium and the Department appealed.

For the following reasons, we conclude that Ascendium has standing to challenge the entirety of the Rule, that the Rule is consistent with the Act and therefore is lawful, and that the Rule is not arbitrary or capricious. Accordingly, we reverse in part and affirm in part the judgment of the district court.

## I.

### A.

The Program's system of loan guarantees is activated when a borrower enters default.[1] *See Bible*, 799 F.3d at 640–41. Borrowers are in default on their loans when they fail to make payments to their lenders for at least 270 days. 20 U.S.C. § 1085(*l*). At that point, "the guarantor reimburses the lender

---

[1] New loans have not been issued under the Program since 2010, but borrowers still have loans that previously were issued, and lenders and guarantors continue to collect payments on those loans. *See* 20 U.S.C. § 1071(d)(1).

for the amount of its loss," 34 C.F.R. § 682.102(g), and the guarantor begins the process of trying to collect the money owed by the borrower, *id.* §§ 682.102(g), 682.410(b)(6). A guarantor or "guaranty agency" can be a state or a private nonprofit organization. 20 U.S.C. §§ 1078(b), 1085(j).

Within 45 days of taking over a defaulted loan, a guaranty agency must "[a]dvise the borrower that the agency has paid a default claim filed by the lender and has taken assignment of the loan." 34 C.F.R. § 682.410(b)(5)(vi)(A). In that same notice, the guarantor must "[d]emand that the borrower immediately begin repayment of the loan," *id.* § 682.410(b)(5)(vi)(D), and "[i]nform the borrower of the options that are available to the borrower to remove the loan from default," *id.* § 682.410(b)(5)(vi)(M), (b)(6)(iv). Additionally, either in that notice or separately, the guaranty agency must "provide the borrower with . . . [a]n opportunity to enter into a repayment agreement on terms satisfactory to the agency," *id.* § 682.410(b)(5)(ii)(D), and "notify the borrower . . . that if he or she does not make repayment arrangements acceptable to the agency, the agency will promptly initiate procedures to collect the debt," *id.* § 682.410(b)(6)(ii). Sixty days after providing that required notice, a guaranty agency may begin reporting the borrower's unpaid debt to consumer credit reporting agencies, *id.* § 682.410(b)(5)(i), (b)(5)(iv)(B); start proceedings to garnish a borrower's federal tax refunds or other government payments, *id.* § 682.410(b)(6)(v); or bring a civil suit, *id.* § 682.410(b)(6)(vii). The 60-day period before the guarantor can take those actions is known as the "initial default period."

Borrowers can remove their loans from default in two ways relevant here. First, any borrower can "enter into a repayment agreement on terms satisfactory to the [guaranty] agency." 34 C.F.R. § 682.410(b)(5)(ii)(D). Second, some

borrowers can rehabilitate their loans, a process that requires them to make nine timely payments in ten consecutive months. 20 U.S.C. § 1078-6(a); 34 C.F.R. § 682.405(b)(1). The payments must be "[r]easonable and affordable" and may be as low as $5.00. 34 C.F.R. § 682.405(b)(1)(i)(D), (b)(1)(iii). Once a loan is rehabilitated, it is no longer in default and the guaranty agency must sell the loan back to a traditional lender or assign the loan to the Department. 20 U.S.C. § 1078-6(a)(1)(A).

Section 1091a of the Act mandates that the reasonable costs of collecting on a defaulted loan must be passed on to borrowers. It provides: "[A] borrower who has defaulted on a loan made under [the Program] shall be required to pay . . . reasonable collection costs." 20 U.S.C. § 1091a(b)(1). Regulations promulgated by the Department generally place a cap on collection costs. Borrowers may be required to pay the lesser amount of (1) a percent of the average costs for all defaulting borrowers, *see* 34 C.F.R. § 30.60(c)(1); or (2) what the borrower would be charged if the loan were held by the Department, *id.* § 682.410(b)(2)(iii). But when a borrower completes a rehabilitation agreement under the Program, "the guaranty agency . . . may, in the case of a sale made on or after July 1, 2014, in order to defray collection costs . . . charge to the borrower an amount not to exceed 16 percent of the outstanding principal and interest at the time of the loan sale." 20 U.S.C. § 1078-6(a)(1)(D)(i).

**B.**

The challenged Rule precludes guarantors from levying collection costs against defaulting borrowers who enter a repayment plan or rehabilitation agreement during the initial default period, *i.e.*, within 60 days after default. 34 C.F.R. § 682.410(b)(2)(i).

The Rule arose from the Seventh Circuit's decision in *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015). There, a defaulting Program borrower entered into a rehabilitation agreement within the initial default period, completed the required payments, and exited default; yet the agency charged her hefty collection costs. *Id.* at 638, 645. The borrower sued the guarantor for breach of contract, arguing that the assessment of costs was prohibited by 34 C.F.R. § 682.410(b)(5)(ii)(D), which at the time said that "[t]he guaranty agency, after it pays a default claim on a loan *but before it . . . assesses collection costs against a borrower*, shall . . . provide the borrower with . . . [a]n opportunity to enter into a repayment agreement on terms satisfactory to the agency." *Bible*, 799 F.3d at 645–47 (emphasis in original) (quoting 34 C.F.R. § 682.410(b)(5)(ii)(D) (2015)).

The Department was not a party to the case but submitted an amicus brief opining that guaranty agencies could not charge collection costs when a borrower promptly enters a repayment plan or rehabilitation agreement. *Bible*, 799 F.3d at 639. The Department had taken the same position before the Seventh Circuit several years earlier. *See id.* at 651. Although the Department had not previously issued guidance with this interpretation, it had taken the position that a guaranty agency "is not required to assess the borrower collection costs" when the borrower "enter[s] into a satisfactory repayment agreement" in the initial default period. J.A. 142 (Department Letter to Guaranty Agency). The Seventh Circuit ruled in favor of the borrower, agreeing with the Department's interpretation. *Bible*, 799 F.3d at 645. But Judge Flaum noted in a concurring opinion that "perhaps the Department might consider reexamining and revising the language of the regulations" to eliminate all ambiguity. *Id.* at 663 (Flaum, J., concurring).

In July 2015, the Department followed Judge Flaum's advice. It issued a "Dear Colleague" letter that interpreted the existing statutes and regulations regarding collection costs as prohibiting guaranty agencies from charging collection costs to borrowers who enter a repayment plan or rehabilitation agreement during the initial default period. *See* J.A. 143–48. Then, in 2017, the Department withdrew that letter and began a negotiated rulemaking. *See* J.A. 149–50; Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 83 Fed. Reg. 37,242, 37,247–50, 37,282, 37,324 (July 31, 2018). After receiving public comments, including from Ascendium, the Department promulgated the challenged Rule. 84 Fed. Reg. at 49,926. The Rule states:

> Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency may charge a borrower an amount equal to the reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim unless, within the 60-day period after the guaranty agency sends the initial notice described in paragraph (b)(6)(ii) of this section, the borrower enters into an acceptable repayment agreement, including a rehabilitation agreement, and honors that agreement, in which case the guaranty agency must not charge a borrower any collection costs.

*Id.*; 34 C.F.R. § 682.410(b)(2)(i).

## C.

Ascendium sued the Department in the district court, alleging that the Rule violates the APA because it exceeds the Department's statutory authority by conflicting with the Act's directives and is arbitrary, capricious, or otherwise not in accordance with law. The Department moved to dismiss the complaint. It argued that Ascendium lacked standing to challenge the part of the Rule relating to collection costs for repayment agreements, as opposed to rehabilitation agreements, and that Ascendium did not adequately allege that the Rule was arbitrary, capricious, or contrary to law. A month later, Ascendium moved for summary judgment on the merits.

The district court decided the motions at the same time, granting both in part. *See Ascendium Educ. Sols., Inc. v. Cardona*, 588 F. Supp. 3d 7, 10 (D.D.C. 2022). The court determined that Ascendium lacked standing to challenge the Rule as it applied to borrowers who entered repayment agreements because Ascendium never charged collection costs to such borrowers and had no plans to do so. *Id.* at 15–16. Next, the court concluded that the Rule, as applied to borrowers who enter rehabilitation agreements, exceeded the Department's authority under the Act. *Id.* at 21–22. Under the district court's reasoning, the Act permits guaranty agencies to charge collection costs to borrowers whenever the agencies engage in collection activities, including during the initial default period. *Id.* at 17–22. The court determined, however, that the Rule is not otherwise arbitrary, capricious, or contrary to law. *Id.* at 22. Accordingly, the district court vacated the Rule with respect to borrowers who enter rehabilitation agreements but left it in place with respect to borrowers who enter repayment plans. That decision satisfied neither party. The Department timely appealed, and Ascendium timely cross-appealed.

9

**II.**

Both parties contend that the district court erred. The Department argues that it had authority to promulgate the Rule; Ascendium asserts that it has standing to challenge the Rule as it applies to all borrowers, and that the Rule is arbitrary and capricious.

On de novo review, we reverse the district court's decision in part. *See Rempfer v. Sharfstein*, 583 F.3d 860, 864–65 (D.C. Cir. 2009). As an initial matter, we find that Ascendium has standing to challenge the Rule as applied to borrowers who enter repayment and rehabilitation agreements. We further conclude that the Department had authority to promulgate the Rule. The Act permits guarantors to charge borrowers only for "reasonable collection costs," 20 U.S.C. § 1091a(b)(1), and the Department permissibly implemented that directive by ensuring that borrowers who create little or no collections work for a guarantor are not charged thousands of dollars in fees. Ascendium's position — that the Act always permits it to recoup collection costs from borrowers — conflicts with the statute's clear, overarching directive that guarantors may collect only "reasonable" fees. Furthermore, we agree with the district court that the Rule is not arbitrary, capricious, or otherwise contrary to law.

**A.**

We begin, as we must, with Ascendium's standing. The Department contends that Ascendium is not injured by the Rule to the extent that it restricts collection costs for borrowers who enter "repayment agreement[s]," as opposed to "rehabilitation agreement[s]," during the initial default period. 34 C.F.R. § 682.410(b)(2)(i). Ascendium has never charged costs to borrowers who enter repayment agreements and offered no evidence of any plan to do so. Thus, in the Department's view,

Ascendium lacks standing to challenge the part of the Rule that applies to that category of borrowers.

To have standing, Ascendium must have suffered an injury in fact that is fairly traceable to the Department's challenged conduct; and a decision granting the relief that Ascendium requests must be likely to redress its injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing is required "for each claim [Ascendium] seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (cleaned up); *accord Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 136 (D.C. Cir. 2022). "[F]or purposes of determining standing, we must assume that petitioners will prevail on the merits of their argument." *See NRDC v. Wheeler*, 955 F.3d 68, 77 (D.C. Cir. 2020).

Ascendium has standing to pursue its claims. The Rule injures Ascendium by depriving it of collection costs that it previously charged (and planned to continue charging) to borrowers who entered rehabilitation agreements during the initial default period. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an injury." (cleaned up)). Further, Ascendium alleges that the rule is unlawful in its entirety either because it was enacted without statutory authority or because it is arbitrary and capricious. A ruling for Ascendium would thus result in vacatur of the Rule. And if the Rule were vacated for either reason, Ascendium's injury would be redressed: It could once again charge collection costs to borrowers who enter rehabilitation plans. Ascendium thus has standing to bring any claims that could lead to the Rule's vacatur, like the ones it raises here. *See Mozilla Corp. v. FCC*, 940 F.3d 1, 46–47 (D.C. Cir. 2019) ("When a party alleges concrete injury from promulgation of an agency rule, it has standing to challenge essential components of that rule . . .

even if they are not directly linked to Petitioners' injuries; if Petitioners' objections carry the day, the rule will be struck down and their injury redressed."); *Catholic Soc. Servs. v. Shalala*, 12 F.3d 1123, 1124–25 (D.C. Cir. 1994) (determining that plaintiffs had Article III standing to challenge entire rule because, even though they were injured only by its prospective effects, they had argued and alleged that its retroactive impacts rendered the entire rule invalid).[2]

**B.**

**1.**

On the merits, Ascendium argues that the Department acted "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), when it promulgated the Rule. Ascendium asserts that the Rule is inconsistent with the Act because it limits guarantors' ability to charge collection fees to defaulted borrowers. In Ascendium's view, the Act unconditionally authorizes such fees when a borrower defaults.

To determine whether the Department acted within the bounds of its statutory authority, we begin with the traditional

---

[2] Ascendium makes an alternative argument that it is directly injured by the Rule as it applies to borrowers who enter repayment plans during the initial default period because the Rule eliminates Ascendium's right to charge fees to those borrowers. Although Ascendium has never said that it intends to charge collection costs to borrowers with repayment agreements, it insists that it should have the right to do so, presumably in case it later changes its mind. Ascendium's "some day" intentions are insufficient to establish standing. *Lujan*, 504 U.S. at 564; *cf. Sabre, Inc. v. DOT*, 429 F.3d 1113, 1118–19 (D.C. Cir. 2005) (determining that target of a promulgated rule had standing because it had concrete plans to engage in activities the rule prohibited).

tools of statutory interpretation: text, context, structure, and purpose. *See Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896, 1904, 1906 (2022); *Lindeen v. SEC*, 825 F.3d 646, 653 (D.C. Cir. 2016).

"The starting point for our interpretation of a statute is always its language." *Lindeen*, 825 F.3d at 653 (cleaned up). Here, the text of the Act mandates that borrowers who default on their loans "shall be required to pay . . . *reasonable* collection costs." 20 U.S.C. § 1091a(b)(1) (emphasis added). In other words, guarantors may recoup the costs of collecting loans from borrowers *only* when such costs are reasonable. But the Act does not define which costs are "reasonable." *See Bible*, 799 F.3d at 641, 650 (citing *Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 799 (7th Cir. 2006)). The plain text of the Act therefore does not provide concrete guidance about which collection costs must be charged to defaulting borrowers. *See Reasonable*, Black's Law Dictionary (11th ed. 2019) (defining "reasonable" broadly as "[f]air, proper, or moderate under the circumstances; sensible" or "[a]ccording to reason"); *Reasonable*, Oxford English Dictionary (2d ed. 1989) (providing similar definition of "reasonable"); *cf. Nat'l Recycling Coal., Inc. v. Reilly*, 884 F.2d 1431, 1435 (D.C. Cir. 1989) ("As the word 'unreasonable' is inherently subjective, the language . . . provides little guidance as to Congress' specific intent.").

The statutory context and structure do not provide any additional clarity on the meaning of "reasonable collection costs"; instead, they demonstrate that Congress intended for the Department to determine which costs fit that criterion. Importantly, in 20 U.S.C. § 1082(a)(1), Congress empowered the Department to "prescribe such regulations as may be necessary to carry out the purposes" of the Act. *Id.* § 1082(a)(1). The Act thus "explicitly le[aves] a gap"

regarding the meaning of "reasonable" collection costs, and it grants the Department the authority to fill that gap, so long as the Department's interpretation itself is reasonable. *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984); *Black*, 459 F.3d at 799 ("Congress left it up to the Secretary to interpret that term [('reasonable collection costs')] through regulations."); *cf. Solar Energy Indus. Ass'n v. FERC*, 59 F.4th 1287, 1298 (D.C. Cir. 2023) (Walker, J., concurring in part and dissenting in part) (noting that where Congress leaves a gap for an agency to fill, like determining what level of pollutants is "unreasonable," "courts should not second guess the agency's decision" (cleaned up)).

Ascendium reads the Act differently. It contends that the Act unambiguously and without exception permits guarantors to charge borrowers collection costs when they default. Thus, Ascendium contends, there is no room for the Department to impose any limits on the recovery of collection costs. In support of its position, Ascendium relies on 20 U.S.C. § 1091a(b)(1) and § 1078-6(a)(1)(D)(i)(II)(aa). But it misconstrues both of those provisions.

Ascendium says that 20 U.S.C. § 1091a(b)(1)'s direction that defaulting borrowers "shall" pay "collection costs" triggers an absolute right for Ascendium to charge such costs to borrowers whenever they default. *Id.* § 1091a(b)(1). Yet that argument ignores the explicit caveat that the assessed costs must be "reasonable." *Id.* ("[A] borrower who has defaulted on a loan made under this subchapter shall be required to pay, in addition to other charges specified in this subchapter reasonable collection costs."). "It is a familiar canon of statutory construction that, if possible, we are to construe a statute so as to give effect to every clause and word." *Air Transp. Ass'n of Am., Inc. v. Dep't of Agric.*, 37 F.4th 667, 672 (D.C. Cir. 2022) (cleaned up); *accord Williams v. Taylor*, 529

U.S. 362, 404 (2000); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) (describing canon against surplusage). Ascendium's construction of § 1091a(b)(1) reads the word "reasonable" out of the statute.

Ascendium also argues that 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa) gives it an unconditional right to charge borrowers a 16-percent fee when borrowers complete their rehabilitation plans. *See id.* § 1078-6(a)(1)(D)(i)(II)(aa) (A guarantor "may . . . in order to defray collection costs . . . charge to the borrower an amount not to exceed 16 percent of the outstanding principal and interest at the time of the loan sale."). As Ascendium admits, however, reading § 1078-6 to mandate an unconditional 16-percent fee requires disregarding the language that guaranty agencies "may" charge that amount "in order to *defray collection costs*." *Id.* (emphasis added). The most natural reading of the statute is that it permits a guaranty agency to charge fees to borrowers only to offset collection costs, and it caps such costs at 16 percent of the loan's outstanding balance. *See Bible*, 799 F.3d at 645 n.4 (describing the 16-percent fee as a "cap" on collection costs); *id*. at 667 (Manion, J., concurring in part and dissenting in part) (noting that § 1078-6 and associated regulation "limits collection costs to 18.5% (now 16%)").

Ascendium posits that "in order to defray collection costs" is merely a "preamble" or "prefatory clause," and so does not change the plain meaning of the "operative clause" allowing an unconditional 16-percent fee. Ascendium Br. 39–42. Yet that reading too would give no effect to several words in the statute — like "may" and "in order to defray costs," 20 U.S.C. § 1078-6(a)(1)(D)(i)(II) — without any basis for doing so in the statutory text or structure. *See Air Transp. Ass'n*, 37 F.4th at

672 ("[We] are to construe a statute so as to give effect to every clause and word." (cleaned up)).

Ascendium's reading of 20 U.S.C. § 1078-6 also assumes that the collection costs charged to borrowers who rehabilitate their loans, subject to the 16-percent cap, are exempt from § 1091a's general requirement that defaulting borrowers must pay "reasonable collection costs." Statutes, however, "must be read as a whole." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007) (cleaned up); *accord Ross v. SEC*, 34 F.4th 1114, 1119 (D.C. Cir. 2022). Ascendium does not point to any part of the statutory text that, explicitly or implicitly, exempts charges under § 1078-6 from § 1091a's reasonableness requirement. And so, any collection costs charged to borrowers under § 1078-6 must also be "reasonable."[3]

Taking a different tack, Ascendium argues that the Rule is inconsistent with the Act's definition of "collection costs." According to Ascendium, the Act defines "collection costs" as

---

[3] The statutory history also demonstrates that Congress intended the 16-percent figure to act as a cap, and not as a guaranteed fee. Congress did not alter the language requiring collection costs to be "reasonable" when it first established the rehabilitation program. An Act to reauthorize and revise the Higher Education Act of 1965, and for other purposes, Pub. L. No. 99-498, § 402(a), 428F, 100 Stat. 1268, 1394–95 (1986) (establishing pilot rehabilitation program). Congress also added the 16-percent provision only after the Department issued guidance to stop guaranty agencies from charging fees on rehabilitated loans that were "not reasonable" (in some cases the fees charged equaled 43 percent of the loan balance). *See* J.A. 139–140 (1994 Dear Guaranty Agency Letter); H.R. Rep. No. 109-276, at 240 (2005) (explaining that bill to amend the Higher Education Act "[f]urther amends section 428F(a) by inserting a new subparagraph (C) of paragraph (1) to codify the collection costs permissible for rehabilitated loans at up to 18.5 percent of the outstanding principal and interest of the loan").

any costs resulting from "collection activities." *See* Ascendium Br. 48–50 (contending that the Act defines "default collection activities" as "activities of a [guarantor] that are directly related to the collection of the loan on which a default claim has been paid to the participating lender" (alteration in original) (quoting 20 U.S.C. § 1072b(d)(3)(A))). Based on Ascendium's reading of the statute, "collection activities" include any action taken in support of recovering a defaulted loan, and guaranty agencies must be able to recover the costs for all such activities. But even if we assume, *arguendo*, that the Act unambiguously defines "collection activities" and collection costs as Ascendium contends, those costs must still be "reasonable" under § 1091a(b)(1). And, as addressed, the Act grants the Secretary authority to determine which costs may "reasonabl[y]" be charged. *See id.* § 1091a(b)(1). Ascendium therefore finds no support in the statutory provision that it cites.

In any event, we disagree with Ascendium's claims that the Act unambiguously defines "collection costs" as costs for "collection activities," and that those terms encompass all steps taken to recover a loan. The provision cited by Ascendium is expressly limited to a subsection setting forth how guaranty agencies must structure their "Operating Funds," and does not address how guarantors may interact with borrowers. *See* 20 U.S.C. § 1072b(d)(3) (defining "default collection activities" "[f]or [the] purposes of [the] subsection"). The Act recognizes a distinction between "collection" and "administrative" costs, and we agree with the Department that the costs incurred by guarantors during the initial default period are largely "administrative." *See* 20 U.S.C. §§ 1080(b) (referring to "reasonable administrative costs and collection costs"), 1082(*l*)(1), (2) (requiring the Secretary to develop regulations that are "designed to minimize administrative costs"); *see also* 34 C.F.R. § 682.410(b)(6)(ii) (requiring guarantor to, in the

initial default period, "notify the borrower . . . that if he or she does not make repayment arrangements acceptable to the agency, the agency *will promptly initiate procedures to collect the debt*" (emphasis added)). Other parts of the Act explicitly connect "collection costs" with activities guarantors may engage in only after the initial default period, like litigation; they suggest that the initial outreach that agencies engage in to communicate with borrowers who first enter default fall into a separate category. *See* 20 U.S.C. § 1087cc(a)(3)(D) ("An agreement with any institution of higher education for the payment of Federal capital contributions under this part shall . . . provide that such student loan fund shall be used only for . . . costs of litigation, and other collection costs agreed to by the Secretary."). Thus, we decline to adopt Ascendium's expansive view of "collection costs."

**2.**

Because the Act requires all "collection costs" charged to borrowers to be "reasonable," we turn to whether the Rule reflects a permissible interpretation of "reasonable collection costs." 20 U.S.C. § 1091a(b)(1). Accordingly, "we consider whether the interpretation is 'arbitrary or capricious in substance, or manifestly contrary to the statute.'" *Good Fortune Shipping SA v. Comm'r*, 897 F.3d 256, 261 (D.C. Cir. 2018) (quoting *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 53 (2011)). "[We] ask whether the [Department] has reasonably explained how the permissible interpretation it chose is 'rationally related to the goals of' the statute." *Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 665 (D.C. Cir. 2011) (quoting *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 388 (1999)).

As noted, the ordinary meaning of "reasonable" is "[f]air, proper, or moderate under the circumstances; sensible" or

"[according] to reason." *Reasonable*, Black's Law Dictionary, *supra*; *Van Hollen v. FEC*, 811 F.3d 486, 492 (D.C. Cir. 2016) (explaining that the starting point for determining whether an agency interpretation of a statute is permissible is the text). We naturally also must evaluate the reasonableness of the costs in question based on the statutory context. *See Ross*, 34 F.4th at 1119 ("[T]he meaning of statutory language, plain or not, depends on context." (cleaned up)); *cf. US Airways, Inc. v. Barnett*, 535 U.S. 391, 399–402 (2002) (looking to statutory context and ordinary use to define term "reasonable accommodation").

Here, the Rule prohibits a guarantor from charging collection costs to a borrower who enters a repayment plan or a rehabilitation agreement during the initial default period: It implicitly deems such costs "unreasonable" under the circumstances. *See* 34 C.F.R. § 682.410(b)(2)(i). The borrowers in question either exit default or begin to exit default within 60 days, and guarantors therefore expend only minimal effort and expense to recover their loans. *See supra* Section I.A. Indeed, a guarantor's activities during the initial default period are primarily administrative, like issuing certain notifications to the borrower. *See id.* But collection costs generally are calculated either under the average-cost system, *see* 34 C.F.R. § 30.60, or as a percentage of a borrower's outstanding loans and interest, *see* 20 U.S.C. § 1078-6(a)(1)(D)(i) — two formulas that typically yield thousands of dollars in charges. In this statutory context, it would not be "reasonable" — *i.e.*, "[f]air, proper, or moderate" — to require borrowers to pay thousands of dollars to guarantors that did little more than send out a few notifications. *Reasonable*, Black's Law Dictionary, *supra*. As the Department explained in promulgating the final Rule, "[it] is not reasonable for the guaranty agency to charge collection costs for collection activities it does not need to take." 84 Fed. Reg. at 49,877; *see*

*also id.* (noting that Rule is consistent with policy articulated in 2015 Letter); J.A. 146 (2015 Letter) (recognizing that borrowers in "different stages of delinquency" create different types of costs). We conclude that the Rule is consistent with the Act's requirement that "reasonable" collection costs must be passed on to borrowers.[4]

The Rule is also consistent with the purpose of the Act's provision regarding the payment of "reasonable" collection costs. *See Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1245 (D.C. Cir. 2020) (finding agency interpretation reasonable where it "fit[] the design of the statute as a whole and its object and policy" (cleaned up)). Congress enacted the reasonable-costs provision "[o]ut of concern for the significant financial problems that defaulted student loans pose for the fisc," and to move the burden of collections costs from taxpayers to the defaulting borrower. *Black*, 459 F.3d at 799. The Rule recognizes that borrowers who enter repayment or rehabilitation agreements within 60 days of defaulting do not create "significant financial problems . . . for the fisc," *id.*, and it provides an incentive for defaulting borrowers to promptly exit default by allowing them to thereby avoid paying collection costs. *See* 83 Fed. Reg. at 37,282 ("[To] encourage borrowers to enter into satisfactory repayment plans, the Department proposes that guaranty agencies may not assess

---

[4] As Ascendium argues, borrowers who enter into repayment or rehabilitation agreements one day after the initial default period may be charged significant costs, without any requirement that guaranty agencies engage in significant collections activities. *See* Ascendium Br. 59–62. But that result is compelled by the Act and its average-cost regulations, which Ascendium does not challenge here. *See Black*, 459 F.3d at 800–01 (upholding average cost scheme). The charges passed on under those circumstances do not make the Rule inconsistent with the Act or otherwise unreasonable.

collection costs to a borrower who enters into an acceptable repayment agreement, including a rehabilitation agreement, and honors that agreement, within 60 days of receiving notice of default."); 84 Fed. Reg. at 49,877 ("It is not reasonable for the guaranty agency to charge collection costs for collection activities it does not need to take because the borrower entered into and met the requirements of a loan rehabilitation agreement.").

Ascendium counters that the Rule does not actually define "reasonable collection costs." It points to the fact that the Rule did not disturb the regulation defining collection costs, 34 C.F.R. § 682.410(b)(2)(iii), which in turn incorporates by reference 34 C.F.R. § 30.60, a provision that broadly describes administrative costs as "costs associated with the collection of a particular debt."

Ascendium's contention that the Rule is not an interpretation of "reasonable collection costs" is not supported by the record. The Department explicitly invoked the statutes requiring "reasonable" costs — 20 U.S.C. § 1078-6 and § 1091a — in promulgating the Rule. *See* 84 Fed. Reg. at 49,926. It also explained that a guaranty agency "must not charge a borrower any collection costs," 34 C.F.R. § 682.410(b)(2)(i), if a borrower enters a repayment or rehabilitation agreement in the initial default period because those costs are "not reasonable." 84 Fed. Reg. at 49,877 ("[It] is not reasonable for the guaranty agency to charge collection costs for collection activities it does not need to take . . . ."). Nor is the provision cited by Ascendium — 34 C.F.R. § 682.410(b)(2)(iii) — inconsistent with the Rule's definition of reasonable collection costs. That subsection does not include in its definition of collection costs the type of administrative costs that guaranty agencies incur during the first 60 days after a default. *See id.* Rather, it lists costs like

"attorney's fees, collection agency charges, and court costs," which guaranty agencies cannot incur until after the initial default period. *Id.* The subsection's reference to 34 C.F.R. § 30.60 also does not define collection costs as any costs associated with collecting debt but instead incorporates a cap on collection costs. *See id.* § 682.410(b)(2)(iii) ("[The] amount charged a borrower must equal the lesser of . . . [t]he amount the same borrower would be charged for the cost of collection under the *formula in* 34 C.F.R. [§] 30.60" (emphasis added)). In fact, § 682.410 as a whole was reasonably interpreted in *Bible* to allow a limitation on charging costs that are incurred during the initial default period to borrowers, even before the challenged Rule was enacted. *See Bible*, 799 F.3d at 650–51.

In sum, the Rule is consistent with the Act's text, structure, and purpose, and the Department acted well within its congressionally delegated authority by promulgating it.

## C.

Ascendium further contends that the Rule is arbitrary and capricious. "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "We will uphold the agency's action if the agency . . . articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Am. Clinical Lab'y Ass'n v. Becerra*, 40 F.4th 616, 624 (D.C. Cir. 2022) (cleaned up).

Ascendium asserts that the Rule is arbitrary and capricious because the Department failed to provide a sufficient response to its comment during the rulemaking process that "there is no reasonable basis for separating the availability of fees from the activities guarantors perform." Ascendium Br. 68. According

to Ascendium, guaranty agencies that encourage the early entry of rehabilitation plans provide superior services to borrowers and further the goals of the Act. Thus, Ascendium argues, it is "perverse" that such guarantors cannot collect fees when they successfully persuade borrowers to enter rehabilitation plans within the initial default period. *Id.* at 71. The Department, however, provided a reasoned response to that comment: It explained that "[c]ollection costs are not intended to be a funding source for guaranty agencies or an incentive for them to offer a statutorily required opportunity to borrowers." 84 Fed. Reg. at 49,877.

As recognized by the Department, the Act requires guaranty agencies to maintain a rehabilitation program, *see* 20 U.S.C. § 1078-6; and a regulation instructs guarantors to inform borrowers of that program during the initial default period, when the first notice of default is issued, *see* 34 C.F.R. § 682.410(b)(5)(vi)(M). Although guaranty agencies generally are permitted to recoup reasonable collection costs from borrowers, the agencies are nonprofit organizations that operate in the context of a program intended to "assist" student borrowers. 20 U.S.C. §§ 1085(j), 1070(a). The Department's response to Ascendium's comment adequately refuted Ascendium's assumption that the purpose of the Rule should be to incentivize guarantors to enter rehabilitation agreements by allowing them to charge collection costs. As required, the Department generally "articulated a satisfactory explanation for its action." *Am. Clinical Lab'y Ass'n*, 40 F.4th at 624 (cleaned up).

\*   \*   \*

For the reasons stated, we affirm in part and reverse in part. We hold that Ascendium has standing to challenge the entirety of the Rule; that the Department did not exceed its

statutory authority in promulgating the Rule; and that the Rule is not arbitrary or capricious.  We thus uphold the Rule in its entirety.

*So ordered.*

WALKER, *Circuit Judge*, concurring:

Congress empowered the Department of Education to impose "reasonable collection costs" on certain debtors who default on their student loans. 20 U.S.C. § 1091a(b)(1). Relying on that phrase, the Department promulgated a rule prohibiting guarantors from recovering "collection costs" within 60 days of those defaults if the debtors have taken certain steps. 34 C.F.R. § 682.410(b)(2). I agree with the Court that the Department acted lawfully, and I join the Court's opinion in full.

I write separately to emphasize that the deference we owe to the Department's choice does not depend on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). With or without *Chevron*, the term "reasonable" itself "confers broad discretion." *Beal v. Doe*, 432 U.S. 438, 444 (1977); *see also Williams Natural Gas Co. v. FERC*, 943 F.2d 1320, 1331 (D.C. Cir. 1991). So if Congress expressly (and constitutionally) empowers an agency to make a "reasonable" regulatory choice, the validity of the agency's action depends on no more and no less than whether the agency acted reasonably and explained itself reasonably.

Here, the Department of Education did so — and we don't need *Chevron* to tell us that.[1]

---

[1] *Cf.* 5 U.S.C. § 706 ("The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."); *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) ("The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained."); Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2153–54 (2016) (Courts should "defer to agencies involving statutes using broad and open-ended terms like 'reasonable,' 'appropriate,'

'feasible,' or 'practicable.' In those cases, courts should say that the agency may choose among reasonable options allowed by the text of the statute. In those circumstances, courts should be careful not to unduly second-guess the agency's choice of regulation. Courts should defer to the agency, just as they do when conducting deferential arbitrary and capricious review under the related reasoned decisionmaking principle of *State Farm*.") (citing *Motor Vehicle Manufacturers Association of United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983)) (other citations omitted).